Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 CR 878 - 2 & 3 | **DATE** | 5/16/2001 |
| **CASE TITLE** | United States of America vs. Milva Gosepa et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendants Gosepa and McKee have both filed motions to suppress and McKee has filed a motion in limine. We deny the motions.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | MAY 17 2001 date docketed | |
| ✓ | Docketing to mail notices. | | | 25 |
| | Mail A 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 MAY 17 AM 8:53 | date mailed notice | |
| WAH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA   )
                           )
                           )
        vs.                )   No. 00 CR 878
                           )
JUDITH RUIMWIJK, MILVA GOSEPA )
and HENRY MC KEE,          )
                           )
        Defendants.        )

DOCKETED MAY 17 2001

## MEMORANDUM OPINION AND ORDER

Defendants Gosepa and McKee have both filed motions to suppress and McKee has filed a motion *in limine*. The government asks that they be denied out of hand because none is accompanied by an affidavit, citing <u>United States v. Randle</u>, 966 F.2d 1209 (7th Cir. 1992). We believe, however, that we have a firm enough grasp of the facts from the various filings to reach the merits. We deny the motions.

When defendant Gosepa was searched, the search turned up over 11,000 pills of a drug commonly know as "ecstacy." Events both prior to and after that search are determinative of the resolution of the pending motions.

On August 25, 2000, defendant Judith Ruimwijk, a Dutch national, traveled to Chicago from Amsterdam on KLM flight 611 with Jermaine Bergtop, returning on August 29, 2000. Both claimed that they were traveling to the Baymont Inn Hotel. Ruimwijk traveled from Amsterdam to Chicago on September 24, 2000, and stayed at the Holiday Inn in Schaumburg. She paid cash for both the August and September flights. Bergtop also stayed at that hotel during a trip in September, although the agent's affidavit does not indicate the date of that trip



in September. On October 4, 2000, Bergtop was arrested at O'Hare, traveling from Amsterdam on KLM flight 611. He was accompanied by a 15-year old girl who had 9,848 pills of "ecstacy" taped to her legs. Both had claimed that they would be staying at the Holiday Inn in Schaumburg. Armed with that information, Customs placed a lookout on Ruimwijk.

On October 27, 2000, Ruimwijk flew from Amsterdam to Chicago on KLM flight 611. She paid cash for her flight. Defendant Gosepa was on the same flight and her reservation was sequential to Ruimwijk's. Both Ruimwijk and Gosepa were selected for U.S. Customs examination. When questioned by Customs inspectors, Gosepa gave "a variety of inconsistent answers to her reasons for traveling to the United States. Although she stated that she was traveling to vacation in America, she also stated that she had brought only $200 in United States funds. She later stated that she was going to have hair surgery." A pat-down search was ultimately conducted, which revealed the presence of foreign objects concealed under her clothing, and that led to the discovery of the "ecstasy" pills. Gosepa was then arrested and was thereupon given her <u>Miranda</u> rights and she executed a written waiver.

Both Ruimwijk and Gosepa then agreed to cooperate. The scene thereafter shifted to the Holiday Inn in Schaumburg. On October 28, 2000, defendant Henry McKee was arrested when he arrived at a room there, according to this agent's affidavit, to meet Ruimwijk and to take possession of the "ecstacy." The agents took his car keys and searched the automobile in which he had arrived at the hotel. There they found, in the glove compartment, a "loaded" gun (Mckee -- by representation of what his wife said but not by affidavit -- contends that the gun was unloaded, as the clip was separate from the gun in a center console). The automobile was leased by McKee's wife and the gun was registered to her. The government represents,

but without affidavit, that McKee has a felony record.

Gosepa complains of her search, contending that it went beyond the routine, that it therefore had to be founded upon reasonable suspicion, and that reasonable suspicion was absent here. A routine border search absent reasonable suspicion is a reasonable search, United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985), but she contends that the pat-down was beyond the routine. We question whether that is so. Indeed, the dissent in Montoya de Hernandez expressly recognized that questioning, pat-downs and thorough searches of luggage are well within the ambit of a routine search. Id. at 551. But even if the search here was more than routine, we think there was a sufficient reasonable suspicion to justify the pat-down. Our Court of Appeals has recognized that the authorities must be allowed to graduate their response to the demands of any particular situation. United States v. Johnson, 991 F.2d 1287, 1292 (7th Cir. 1993). In Saffel v. Crews, 183 F.3d 655 (7th Cir. 1999), for example, both the district court and the appellate court agreed that the circumstances justified a pat-down, a relatively unintrusive invasion of privacy; the issue was the legality of a far more intrusive strip-search. Here we think the circumstances – the lookout on Ruimwijk, the sequential reservations, the same flight, the pattern of two persons being involved, and the somewhat confused and unconvincing responses – provided an ample basis for a pat-down, although possibly not a more intrusive search. And once the presence of foreign objects was detected under the clothing, there was ample justification for extending the search to reveal what those foreign objects might be.

Gosepa also seeks to suppress incriminating statements she made after her arrest. But by then she had been given her Miranda rights and had signed a waiver. While she

acknowledges that there is no general exclusionary rule for international law violations standing alone, United States v. Lawal, 231 F.3d 1045 (7th Cir. 2000), she invokes a claimed violation of the Vienna Convention in tandem with her claimed Miranda violation – but there was no Miranda violation.

McKee's motion fares no better. He seeks to exclude any evidence of a gun, arguing that the search of the automobile was illegal and that there is insufficient evidence to tie the gun to him as a "tool of the trade." He points out that the automobile is leased to his wife and the gun is registered to her. Accordingly, he distinguishes United States v. Rush, 890 F.2d 45 (7th Cir. 1989), where apparently the vehicle and the gun were the property of the defendant (although that is not entirely clear). But he had the car keys; he drove the automobile to the hotel, the government can argue, to transport the drugs away; and the gun was accessible to him. An inventory search was justified both because the automobile was subject to seizure and forfeiture, United States v. Pace, 898 F.2d 1218 (7th Cir. 1990), and as an incident of a lawful arrest, United States v. Jackson, 189 F.3d 502 (7th Cir. 1999). Indeed, the automobile driven by Pace in Pace was not registered to him but to an Angelo Pace, who lived at an address that defendant used. The government can reasonably argue that the gun was accessible to him and was there to protect him and his intended illegal cargo, part of the equipment with which he had outfitted the automobile he was using. At trial he is free to contend that the gun is registered to his wife and that he had no knowledge of or use for it. But he cannot foreclose the jury from knowing it was there.

JAMES B. MORAN

_____ May 16 _____, 2001.                    Senior Judge, U. S. District Court